UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MURRAY LAMONT KING, JR.

                        Plaintiff,           12-CV-6186T

                                             **DECISION**
                v.                           **and ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

                        Defendant.
_____


### INTRODUCTION


        Represented by counsel, Murray Lamont King, Jr. ("Plaintiff"
or "King), brings this action pursuant to Title XVI of the Social
Security Act ("the Act"), seeking review of the final decision of
the Commissioner of Social Security ("the Commissioner") denying
his application for Supplemental Security Income ("SSI").  The
Court has jurisdiction over this action pursuant to 42 U.S.C.
405(g).

        Presently before the Court are the parties' competing motions
for judgment on the pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure.  For the reasons set forth below, this
Court finds that the decision of the Commissioner is supported by
substantial evidence in the record and is in accordance with the
applicable legal standards.  Therefore, this Court hereby grants
the Commissioner's motion for judgment on the pleadings and denies
the Plaintiff's motion.

## PROCEDURAL HISTORY

On March 16, 2010, Murray Lamont King, Jr. filed an application for SSI, claiming that he was disabled due to gunshot wounds in the right leg and mental health issues beginning on March 6, 2010. Administrative Transcript ("Tr.") at 148-60, 153. King's claim was denied on June 22, 2010. Tr. at 61. At his request, an administrative hearing was conducted on March 30, 2011, before Administrative Law Judge ("ALJ") Mark Sochaczewsky, who presided via videoconference. Tr. at 32-52. King, who was represented by attorney Kelly Laga, testified at the hearing, as did vocational expert Peter A. Manzi, Ed. D. ("Manzi" or "the VE").

On May 10, 2011, the ALJ issued a decision finding that King was not disabled during the period from his alleged onset date. Tr. at 19. On February 13, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at 1-3. This action followed on April 11, 2012.

## FACTUAL BACKGROUND

At the time of the hearing, Plaintiff was a 27 year old individual with a high school education and one year of college completed. His past relevant work was as a retail salesman, mover, stock clerk, telemarketer, van driver, and fast food worker. Tr. at 25. King claims he became disabled on March 6, 2010 due to the residual effects of gunshot wounds to the right hip and right knee,

resulting in significant pain in his right hip and numbness across the anterior portion of the knee.  He also claims to have asthma as well as difficulty sleeping and mental health issues, such as diagnosed depressive disorder, history of substance abuse, reported hallucinations, anxiety, and Post-traumatic Stress Disorder from past assaults. Tr. at 214-215, 256-260, 337-338.

The Plaintiff's physical impairments are the result of sustaining gunshot wounds to his right hip and knee on March 6, 2010.  Tr. at 218.  Following the incident, the Plaintiff went to Strong Behavioral Health for treatment on April 1, 2010.  He claimed to have significant pain and asked for a cane to assist him in walking.  Tr. at 245-249.  The attending physician, Zaneb Yaseen, M.D., observed Plaintiff had pain in the right hip and limited hip rotation indicating "some debility."  Tr. at 247. Dr. Yaseen prescribed him a cane and advised him to follow up in four weeks. Tr. at 247.

On June 14, 2010, about two months after sustaining the gunshot wounds,  consultative physician Harbinder Toor, M.D., conducted an internal medicine examination. Tr. at 260-263. Dr. Toor noted a scar from a gunshot wound to the chest that occurred in January 2008.  Tr. at 262. Medical records from the time of that incident indicate that there was no evidence of injuries to the internal organs other than a minor lung injury and a fractured rib. Tr. at 216, 230, 235-236.

Dr. Toor observed that Plaintiff was in moderate pain and opined that Plaintiff had moderate to severe limitations in standing, walking, and heavy lifting, as well as moderate limitations in sitting for prolonged periods. Tr. at 261, 263. Dr. Toor advised that Plaintiff should avoid heavy exertion and pulmonary irritants due to his asthma. Tr. at 263.

On August 6, 2010, Plaintiff went to the University of Rochester Department of Orthopedics reporting pain in his right hip and knee. Tr. at 320-321. Susan Sims, M.D., conducted an examination, noting that Plaintiff walked with a cane. Tr. at 320. Dr. Sims also noted that Plaintiff had weakness in the right leg, and she suggested he partake in physical therapy before the doctors consider removing bullet fragments. Tr. at 320.

King has a history of marijuana and alcohol abuse. He engaged in outpatient treatment programs at St. Mary's Mental Health from December 2003 to September 2004. Tr. at 205. He testified at his administrative hearing that he had last used drugs approximately 1½ years prior to the hearing. Tr. at 37. His participation in treatment programs was marked by absenteeism and occasional positive drug screens. Tr. at 206-207.

On May 4, 2010, Plaintiff went to the Rochester Mental Health Center, an outpatient clinic for adults with mental and behavioral health issues. Tr. at 253-255. At that time, he was homeless and residing in a shelter. He presented with symptoms of depression,

psychotic disorder, and substance abuse, complaining of visual hallucinations, low mood, sleeplessness, and negative thoughts. Tr. at 254. He was prescribed the medications Citalopram and Trazadone. His Global Assessment of Functioning ("GAF") score was 50. Tr. at 254.

On June 14, 2010, Kavitha Finnity, Ph.D. completed a psychiatric evaluation of Plaintiff. Tr. at 256-259. Dr. Finnity diagnosed Plaintiff with depression and Posttraumatic Stress Disorder ("PTSD"). Dr. Finnity noted that Plaintiff walked with a cane and was able to dress, bathe, and groom himself, as well as cook, clean, do laundry, shop, and manage his money. Tr. at 258. In a medical source statement, Dr. Finnity opined that Plaintiff could follow simple directions; perform simple tasks; maintain a regular schedule; learn new tasks; perform complex tasks; and make appropriate decisions; but that he may have some difficulty with attention and concentration, relating to others and dealing with stress. Tr. at 258.

On June 18, 2010, A. Hochberg, a State agency review psychologist, evaluated the record to assess Plaintiff's mental residual functional capacity ("RFC"). Tr. at 264-277. The psychologist reported that Plaintiff was mildly limited in activities of daily living and maintaining social functioning. The psychologist also reported that Plaintiff was moderately limited in maintaining concentration, persistence, or pace. Tr. at 280.

In June 2010, Plaintiff commenced regular treatment at the Rochester Mental Health Center with treating therapist Tammie Raucci, a licensed master social worker. E.g., Tr. at 298-319 (Reports of Ms. Raucci). 298-319. On August 30, 2010, Ms. Raucci only partially filled in a questionnaire regarding Plaintiff's mental residual functional capacity. Plaintiff was being treated with Celexa, Trazodone, and Abilify at the time. Ms. Raucci checked a box opining that Plaintiff could not engage in full-time competitive employment on a sustained basis; however, she had failed to fill in the portion of the questionnaire evaluating his abilities and aptitudes regarding unskilled, semiskilled, and skilled work. Tr. at 322-326. Reports from his treating psychiatrists indicate that Plaintiff was responding well to medication and had no side effects. Also, he was able to manage stressful situations, though reported hearing voices occasionally. E.g., Tr. at 333 (Report of Dr. Patil). Plaintiff was discharged from the Rochester Mental Health Center for noncompliance in December 2010 after attending only 8 of 16 scheduled therapy appointments. Tr. at 331.

On March 22, 2011, King returned to the Rochester Mental Health Center reporting low mood, auditory hallucinations, and racing thoughts. He also reported having anxiety with tightness in his chest and feeling short of breath. He had flashbacks of being shot and thoughts of hurting others. He was diagnosed with

depression and psychotic disorder.  His Global Assessment of Functioning score was 55, up from 50.[1]  Tr. at 348.

## DISCUSSION

### I. Scope of Review

When reviewing the appeal of the Social Security Administration's denial of a claimant's application for benefits, Title 42 U.S.C., Section 405(g) directs the Court to accept the Commissioner's factual findings, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938).  The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim.  Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment

---

[1]

Global Assessment of Functioning scores from 41 - 50 are associated with serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). Scores from 51 - 60 are associated with moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 1994).

on the merits is possible merely by considering the content of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. <u>See generally</u> <u>Bell Atlantic Corp. V. Twombly</u>, 550 U.S. 544 (2007).

## II. The Commissioner's Decision to Deny the Plaintiff benefits is Supported by Substantial Evidence in the Record

The ALJ decided that Plaintiff is not entitled to receive SSI benefits based, finding that King was not disabled within the meaning of the Act. Tr. at 19. An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy" 42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). In his decision denying benefits, the ALJ adhered to the five-step analysis required to evaluate disability claims.[2] Tr. at 21-26.

---

[2]

The five-step analysis requires the ALJ to consider the following: (1) whether the claimant is performing substantial gainful activity; (2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; (3) if the claimant suffers severe impairment(s), the ALJ considers whether the claimant has impairment(s) that lasted or expected to last for a continuous period of at least twelve months, and impairment(s) meets or medically equals a listed impairment in Appendix 1, Subpart P, Regulation No. 4; if so, the claimant is presumed disabled; (4) if not, the ALJ considers whether impairment(s)

Under step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability.  Tr. at 21.  At steps 2 and 3, the ALJ concluded that Plaintiff had the following severe impairments: history of gunshot wounds to his right hip, knee, chest; asthma; and a depressive disorder.  The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in Appendix 1, Subpart P of the Social Security Administration's regulations. Tr. at 21.

At steps 4 and 5, the ALJ concluded that although Plaintiff was unable to perform his past relevant work, he retained the residual functional capacity to perform sedentary work with certain restrictions.  Tr. at 22,25.  Considering his age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. at 25.

King argues that the ALJ's decision finding that he is not disabled was against the weight of substantial evidence and erroneous as a matter of law.  Specifically, Plaintiff maintains that the ALJ's finding that he did not meet or medically equal any

prevents the claimant from doing past relevant work; (5) if the claimant's impairment(s) prevents him or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

of the listed impairments in Listing 1.02 of the Social Security Administration's regulations as set forth in 20 C.F.R. Part 404 was not supported by substantial evidence (Point I of Plaintiff's Memorandum of Law in support of judgment for motion on the pleadings); the ALJ's residual functional capacity finding was not supported by substantial evidence (Point II); the ALJ did not properly assess Plaintiff's credibility (Point III); and the Commissioner erred in basing his opinion on insufficient testimony from the Vocational Expert (Point IV). See Plaintiff's Memorandum of Law ("Pl's Mem."), Points I-IV (Dkt. No. 7).

### A. The ALJ's Finding that Plaintiff Does Not Meet the Requirements for Listing 1.02 is Supported by Substantial Evidence

After considering whether listing 1.02 applied to this case, the ALJ found that King's hip and knee impairments did not meet or medically equal one of the impairments deemed to be disabilities in the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 21. Based on the record, the ALJ was correct in this finding.

Listing 1.02 includes impairments classified as major dysfunction of a joint (due to any cause). The listing requires joint dysfunction characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints. Also, there must be objective evidence, such as appropriate medically acceptable imaging of joint deformity. The regulations indicate that a

finding of disability is appropriate if claimant's hip, knee or ankle impairments result in an inability to ambulate effectively. 20 C.F.R. § 404 App. 1, 1.02.

The regulations provide that a claimant is found unable to ambulate effectively if his or her impairment(s) interferes very seriously with his or her ability to independently carry out routine activities of daily living, such as using standard public transportation, shopping, and banking. Ambulation is ineffective if a claimant must use a hand-held assistive device(s) that limits the functioning of both upper extremities, such as a walker, two crutches, or two canes. 20 C.F.R. § 404 App. 1, 1.02(B)(2)(b).

The ALJ correctly found that King "has not lost the ability to ambulate effectively, as required by listing 1.02." Tr. at 21. The record, including King's own testimony, shows that his impairments do not interfere very seriously with his ability to independently carry out routine activities of daily living. King reported to Drs. Toor and Finnity that he could bathe, groom, dress, cook, clean, wash laundry, and shop for himself. Tr. at 258, 261. Moreover, he testified that he drove to the hearing and was able to use public transportation. Tr. at 35. In August 2010, Dr. Sims observed that, despite alleged pain, King ambulated effectively with a cane and had reasonable range of motion in the right hip and knee. Tr. at 320. Pursuant to the regulations, employing the use of one cane to ambulate does not, as a matter of

law, render ambulation ineffective because it limits the functioning of only one upper extremity, not both. 20 C.F.R. § 404 App. 1, 1.02(B)(2)(b).

Plaintiff relies on a portion of Dr. Toor's medical opinion from June 2010 and his own testimony at the hearing to argue that he is unable to ambulate effectively. Pl's Mem. at 12-13. Indeed, Dr. Toor observed that King's gait was abnormal and that he was limping to the right side with and without his cane. Tr. at 261. He also noted that King had difficulty getting on and off the exam table due to pain. Tr. at 261. Dr. Toor opined that King had moderate to severe limitations to standing and walking. Tr. at 263. However, the ALJ considered this medical opinion in light of the record as a whole and correctly decided to assign it little weight because the examination took place while King was still recuperating from the gunshot wounds he had sustained approximately two months prior. Tr. at 24.

Plaintiff also argues that this Court must remand because the ALJ failed to provide more than a brief, conclusory statement that Plaintiff's impairments do not meet the requirements of listing 1.02. Plaintiff argues that this lack of meaningful rationale indicates an undeveloped medical record. Pl's Mem. at 10.

I find, however, that the ALJ's explanation of his determination that Plaintiff is not disabled is legally sufficient. The Second Circuit has consistently held that the courts will

uphold an ALJ's determination regarding claimed listed impairments if "portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." Berry, 675 F.2d at 468. Here there is ample evidence, including Plaintiff's own testimony, that supports the ALJ's finding that King's impairments do not very seriously interfere with his ability to independently carry out routine ambulatory activities such as using standard public transportation, shopping, and banking. Therefore, this Court finds that the ALJ did not err in finding that neither Plaintiff's hip nor knee impairment qualifies as a major joint dysfunction within the regulations.

**B.  Alleged Errors in the ALJ's Residual Functional Capacity Finding (Plaintiff's Points II, III, and IV)**

Plaintiff claims that the ALJ's residual functional capacity finding is not supported by substantial evidence. In order to make a proper disability finding, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.4545(a)(3)-(4); see also SSR 96-8p, SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2, 1996). Here, the ALJ found that Plaintiff retained the residual functional capacity for a full range of sedentary work,[3] except

---

[3]
    The regulations define sedentary work as a job "which involves sitting, a certain amount of walking and standing is often necessary."  20 C.F.R. 416.967(a).

that "he is moderately limited in his abilities to maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes." Tr. at 22. The ALJ further noted that King "can understand, remember and carry out simple tasks." Tr. at 22.

I find that the ALJ's opinion is based on substantial evidence contained in the record. The ALJ relied on evaluations from consultative physicians Drs. Toor, Hochberg, and Finnity, and treating physician Drs. Yaseen and Sims, all of whom addressed the Plaintiff's symptoms and functional limitations. Tr. at 24.

Dr. Sims, whom the ALJ afforded considerable weight, observed that King had "reduced strength on the right side and ambulates with a cane." Tr. at 320. She opined that Plaintiff should "participate in physical therapy and return to the clinic...to assess progress." Tr. at 320. The ALJ took these strength limitations into consideration in his RFC finding. Tr. at 24. See 20 C.F.R. §416.967(a). Dr. Toor opined that Plaintiff had moderate to severe limitations in standing, walking, and heavy lifting. Tr. at 263. The ALJ decided to give little weight to Dr. Toor in this assessment because his opinion was given when King was still recuperating from his latest gunshot wounds. Tr. at 24. It is

within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole. See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve." (Citing Richardson v. Perales, 402 U.S. 389, 399 (1971))). Dr. Sims' assessment of Plaintiff's physical limitations took place further along in King's recuperation. Also, her opinion was consistent with the other medical evidence in the record, namely the mild impairment Dr. Yaseen noted and Plaintiff's failure to follow up with physical therapy or further examinations. Tr. at 247. Furthermore, the record reveals no significant treatment for Plaintiff's allegedly disabling pain and no prescription pain medication. The ALJ therefore appropriately incorporated limitations supported in the record into his residual functional capacity finding.

The ALJ referred to Drs. Finnity and Hochberg's psychiatric reviews in determining Plaintiff's mental residual functional capacity. Dr. Finnity diagnosed King with depressive disorder and Post-traumatic Stress Disorder and opined that he "can follow and understand simple directions and perform simple tasks. He has some difficulty with attention and concentration. He can maintain a regular schedule... can learn new tasks and perform complex tasks... can make appropriate decisions. He has difficulty relating with others and dealing with stress." Tr. at 258. Dr. Hochberg also noted moderate limitations in King's ability to

"maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; interact with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes." Tr. at 278-281. These difficulties were properly incorporated into the ALJ's finding that Plaintiff is moderately limited in his ability to perform sedentary work. Also, the ALJ properly considered King's documented history of substance abuse and found it not to be a contributing factor material to a finding of disability. Tr. at 23.

For these reasons, this Court finds that the ALJ's residual functional capacity finding was supported by substantial evidence in the record.

Plaintiff argues that the ALJ erred in failing to obtain adequate medical opinions regarding King's exertional limitations. King claims there is evidence in the record indicating significant limitations sitting and standing. Pl's Mem. at 14-15. He cites Dr. Toor's opinion and his own subjective complaints to support this contention. Pl's Mem. at 15. Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); See also Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir.1982). However, if the overall record does not support the alleged limitations, the ALJ's failure to discuss was harmless. see

Chiaravalle v. Astrue, No. 11-CV-597S, 2012 WL 3860797 at *5-6 (W.D.N.Y. Sept. 5, 2012)). Because the record as a whole does not support the alleged limitations set forth in Dr. Toor's June 2010 medical opinion and King's inconsistent testimony, the ALJ was under no obligation to develop the record further.

Because Plaintiff bears the burden of proving his residual functional capacity, the ALJ could reasonably rely on the lack of evidence that would preclude a range of sedentary work with additional exertional limitations. see 20 C.F.R. § 404.1545(a)(3) (the claimant is responsible for providing the evidence used in the residual functional capacity determination); see also Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). Where the record does not contain sufficient clinical findings, laboratory tests, or a diagnosis or prognosis necessary for a decision to be made, a consultative examination may be warranted at the discretion of the ALJ. 20 C.F.R. §416.919a. See Hughes v. Apfel, 992 F.Supp. 243, 248 (W.D.N.Y.1997) (citing 20 C.F.R. §404.1517 (the SSDI equivalent to §416.917)). However, the ALJ does not have a duty to re-contact a treating physician if the evidence submitted by the treating source, viewed as a whole, is complete. Hluska v. Astrue, No. 6:06-CV-0485 (LEK/VEB), 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009) (citations omitted). Moreover, the ALJ is not obligated to re-contact treating physicians when the record contains no critical gaps and there are medical opinions from different sources concerning the Plaintiff's impairments. Taylor v. Astrue, No. 3:05-

CV-1444 (LEK/DEP), 2008 WL 3884356, at *13 n.18 (N.D.N.Y. Aug. 18, 2008).

Defendant contends that the record was sufficient to support a decision on the issue of disability and therefore re-contacting Plaintiff's treating sources was not required here. The Court agrees. As discussed, the record contains ample treatment notes from Plaintiff's treating sources related to his impairments and the resultant limitations. Because the ALJ had adequate medical findings in the record to assess Plaintiff's restrictions and his ability to work during the relevant period, there was no reason for the ALJ to re-contact any of these treating sources or call for the testimony of a medical expert. The arguments set forth at points II, III, and IV of Plaintiff's memorandum of law in support of his motion are therefore rejected.

### D.    The ALJ Properly Assessed Plaintiff's Credibility

The ALJ found that King's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible insofar as the symptoms were not all reasonably caused by his medically determinable impairments. Tr. at 23. The ALJ "has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment...[which he must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)(citation omitted). The ALJ thus is not obligated to

accept a claimant's testimony about his limitations without question. Id. Plaintiff contends that the ALJ's credibility finding was improper because it was based on his residual functional capacity finding. Pl's Mem. at 18. However, this Court finds that the ALJ's credibility assessment was sufficient and proper.

Here, the ALJ properly considered Plaintiff's activities of daily living, inconsistent testimony, and the evidence that Plaintiff took no prescription medication and failed to follow up with physical therapy in reaching his conclusion. Def's Mem. at 23-25.

The ALJ properly afforded little weight to Dr. Toor's opinions from June 2010 regarding standing and walking because they were made when Plaintiff was still recuperating from recent gunshot wounds. Tr. at 24. Furthermore, claimant's testimony seems to contradict itself in this regard. King testified that he can only sit for 15 to 20 minutes at a time, but usually has to get up after five to ten minutes. Tr. at 44. However, on multiple occasions King has stated he is able to participate independently in many activities of daily living. He testified that he can use public transportation and drive himself up to 20 miles a week. Tr. at 35. He also reported to Drs. Toor and Finnity that he could bathe, groom, dress, cook, clean, wash laundry, and shop for himself. Tr. at 258, 261. The ALJ concluded that the Plaintiff's "statements

concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible," a determination within his discretion. Tr. at 23; Ponte v. Secretary, Dep't Health and Human Services, 728 F.2d 588, 591 (2d Cir. 1984) (quoting Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983)).

King went to Dr. Sims in August complaining of right hip and knee pain, but he stated that the pain felt a little bit better than his last visit. Tr. at 320. Dr. Sims opined that Plaintiff had reduced strength on the right side and should "participate in physical therapy and return to the clinic...to assess progress." Tr. at 320. However, King failed to follow these instructions. King testified that he failed to attend physical therapy because he was homeless and his insurance would not cover his treatment. Tr. at 40. However, on June 30, 2010, he told his treating psychotherapist at Rochester Mental Health Center that he was not able to attend physical therapy due to lack of transportation. As a result, she gave him an all-day bus pass. Tr. at 312. He still failed to attend physical therapy after that date and was discharged from mental health services at Rochester Mental Health Center in December 2010 for noncompliance. Tr. at 348, 331. He only attended 8 of 16 scheduled therapy appointments. Tr. at 331.

This evidence indicates that the ALJ was reasonable in finding that the claimant's allegations of disabling pain were not supported by the complete record. Tr. at 23. Despite this finding, the Court notes that the ALJ did not discount Plaintiff's subjective complaints entirely. Rather, the ALJ only discounted the Plaintiff's complaints that are inconsistent with the substantial evidence in the record.

The ALJ determined that Plaintiff was only able to perform sedentary work with certain limitations, such as a moderate limitation in his abilities to interact appropriately with the general public. This factored in Plaintiff's testimony that he primarily socializes with his girlfriend and family. Tr. at 22.

Accordingly, Plaintiff's argument that the ALJ failed to properly assess his subjective complaints is rejected.

### E.   The Commissioner Did Not Err in Crediting on the Vocational Expert's Testimony

Plaintiff argues that the hypothetical questions posed to the Vocational Expert at the hearing were based upon a residual functional capacity finding that did not accurately and completely describe King's limitations. Therefore, he argues that the Vocational Expert's answers to these questions cannot provide substantial evidence to support the denial of benefits. Pl's Mem. at 20. However, as discussed above, this Court finds the ALJ's residual functional capacity finding to be proper. Therefore, there

was sufficiently "substantial record evidence to support the assumption upon which the vocational expert based his opinion." <u>Dumas</u>, 712 F.2d at 1554.

**CONCLUSION**

After review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 6). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 7), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    June 21, 2013
          Rochester, New York